IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DENNIS GERALD CLAIBORNE,  No. CIV S-08-1319-CMK-P

    Plaintiff,

  vs.  ORDER

A. SCHWARZENEGGER, et al.,

    Defendants.

_____/

    Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is plaintiff's first amended complaint (Doc. 12).

    The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne,

84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

As in the original complaint, plaintiff states that this action is brought by a group of disabled inmates housed at High Desert State Prison.[1] Plaintiff states that he is disabled and underwent total knee replacement surgery on March 27, 2007, and is undergoing physical therapy. He states that he is limited in his ability to squat. Plaintiff names the following as defendants: Schwarzenegger, N. Grannis, T. Felker, D. Christie, T. Robertson, M. Wright, M.D. McDonald, the Director of the California Department of Corrections and Rehabilitation, and Does one through ten.[2] Plaintiff asserts Eighth Amendment claims based on alleged deliberate indifference to medical needs and seeks prospective injunctive relief and money damages.

The allegations in the first amended complaint are substantially similar to those set forth in the original complaint. Plaintiff states that, on March 15, 2008, he was on the Facility A yard when an alarm was activated in Facility B. Upon activation of the alarm, correctional officer Albonico ordered all inmates to get down on the ground. Plaintiff states that he was

---

[1] Because plaintiff is a non-attorney proceeding pro se, he cannot represent the interests of a class. See McShane v. United States, 366 F.2d 286 (9th Cir. 1966). Further, because plaintiff is incarcerated, he cannot "fairly and adequately protect the interests of the class," as required by Federal Rule of Civil Procedure 23(a)(4). This action, therefore, will not be construed as a class action but will be construed as an individual civil suit brought by plaintiff.

[2] These are the same defendants named in the original complaint.

2

standing near a trash can and chose to sit down on the trash can.³ According to plaintiff, "Albonico ordered subordinate staff to order all mobility impaired inmates to get on the ground and ordered Plaintiff Claiborne to get off of the trash can and get on the ground." He states that, when he asked for assistance to get down to the ground, "he was met with laughter" and that he was told by "attending officers" that they were not required to help him get on the ground.

Following this incident, plaintiff filed a request for reasonable accommodation "contesting the order to get down on the ground." He states that he was interviewed on March 27, 2008, he was interviewed by correctional sergeant Marsh and correctional counselor Jackson. According to plaintiff, March "stated on the record that the Plaintiff was standing next to a table, and chose to stand instead of sitting at the table." Plaintiff states that this statement was used to deny his request.⁴

On April 8, 2008, plaintiff filed a further grievance "contesting the sergeant's response." He argued that "staff's position is to require (ADA) handicap inmates to get on the ground without staff assistance." Defendant Robertson wrote the second level appeal response, dated April 15, 2008. According to plaintiff, "T. Robertson chose to continue the sergeant's position by asserting that Plaintiff Claiborne was standing, and used that to deny the Plaintiff's request." He claims that defendants Wright, McDonald, and Felker were made aware of the situation and "chose to approve, continue, and/or tacitly authorize the fraudulent staff responses."

/ / /

/ / /

---

³ Plaintiff provided a bit more factual detail in his original complaint. Specifically, plaintiff stated that, when an alarm was activated on March 15, 2008, he was standing near a trash can and a "designated White inmate table" and, instead of getting on the ground or sitting at the table, he "chose to sit down immediately on the trash can to get out of the officer's way." He asserted that he could not sit at the table because he is Black and sitting at the White inmate table would have been against "prison politics."

⁴ In the original complaint, plaintiff alleged that Marsh "fraudulently stated on the record that the Plaintiff was standing next to a table and chose to stand instead of sitting at the table.

On April 21, 2008, plaintiff further challenged the denial of his grievance. He states that he "again asserted that (HDSP) staff evades the issue of whether it is constitutionally legal to require handicap inmates to sit on the ground when it is physically impossible to 'squat and sit' on the ground without injuring themselves." Plaintiff's claims was denied on May 21, 2008.

Plaintiff argues that defendants' conduct violated the Eighth Amendment. He asserts that defendants should be required to provide him the accommodation of "being allowed to sit in seats or stand out of the way." Plaintiff argues that defendants "were grossly reckless in the supervision of subordinate employees." He asserts that defendants should be required to provide him the accommodation of being allowed to respond to alarms by sitting at tables on yards, sitting at tables in buildings, or standing out of the way.

Attached to plaintiff's complaint is the Director's Level Appeal Decision by defendant Grannis, dated May 21, 2008. In that decision, defendant Grannis summarizes the second level appeal response as follows:

> . . . The Operational Procedure (OP) #612 was created by the CDCR and does specifically speak to mobility impaired inmates during alarms. It says in part, "Each inmate identified as having a hearing, mobility, or vision impairment that impacts placement shall be issued a vest by custody staff . . . these inmates may need staff to assist them to the ground or be relocated to a secure area during emergencies." During the interview, the appellant stated that in the past, mobility impaired inmates have been allowed to sit at the tables or benches during emergencies if they are already sitting at the tables and benches with the emergency occurs. However, mobility impaired inmates have not been allowed to move across the yard to access tables or benches. The appellant stated he did get down as ordered without assistance. The appellant was informed that OP #612 does not state that inmates are allowed to stand during emergencies.

The Director's Level Appeal Decision states:

> At the Director's Level of Review, the appellant states that he did not get down without assistance but had several inmates help him down. He believes the appeal responses do not address ADA inmates' inability to actually squat and sit.

\* \* \*

4

> The appellant was informed that OP #612 stated in part that yellow vests shall be issued to inmates that are Permanently Vision Impaired, Permanently Mobility Impaired impacting placement, or Permanently Hearing Impaired impacting placement. These inmates may need staff to assist them to the ground or be relocated to a secure area during emergencies. On May 20, 2008, the examiner spoke with D. Christie, the Health Care Appeals Coordinator at HDSP. It was learned that the appellant is deemed Mobility Impaired . . . and has been issued a mobility impaired vest. He may ask for assistance from staff if necessary. . . . After considering the evidence and arguments herein, it has been determined that staff acted appropriately on the appellant's request.

It is unclear whether plaintiff ever argued during the prison grievance process that his request for staff assistance on March 15, 2008, was "met with laughter."

## II. DISCUSSION

Plaintiff's amended complaint continues to suffer from defects noted in the court's September 16, 2008, order addressing the original complaint. Specifically, as to plaintiff's request for prospective injunctive relief, the court stated in the prior order:

> Plaintiff asserts that defendants should be ordered to provide him the accommodation in the future of "being allowed to sit in seats or stand out of the way" if an alarm is called. However, according to the facts alleged by plaintiff, current policy already provided that disabled inmates may sit at nearby tables. Thus, the prospective accommodation he seeks is already in place. To the extent plaintiff's claim is based on the allegation that defendants denied his accommodation request based on the "fraudulent" belief that he was standing next to a table when the alarm sounded on March 15, 2008, the facts alleged by plaintiff indicated that he was, in fact, standing next to a table but nonetheless chose not to sit there as allowed by prison regulations. It does not appear that these defects in plaintiff's claims for prospective injunctive relief can be cured through amendment.

Plaintiff continues to seek injunctive relief in the amended complaint. However, the documents attached to the amended complaint demonstrate that a reasonable accommodation is already in place. Specifically, OP #612 provides that mobility impaired inmates are specially identified with yellow vests and are able to ask for staff assistance. In this case, plaintiff alleges that he is mobility impaired and the grievance responses confirm that plaintiff has been issued a yellow vest. Thus, he is able to take advantage of OP #612 if necessary.

1 | Plaintiff also requests money damages. Again, this claim was also addressed in
2 | the prior order:

> Plaintiff also appears to seek money damages for "past . . . pain & suffering" resulting from the March 15, 2008, incident where he was ordered down to the ground even though he is mobility impaired. Any such claims must necessarily be based either on: (1) the refusal of correctional officers to allow him to sit at the table allegedly designated for White inmates; or (2) the refusal of correctional officials to help him to the ground. Plaintiff, however, does not say which defendants were involved in the March 15, 2008, incident. Instead, he refers only to "staff" and "attending officers."
> To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).
> It is possible that plaintiff can assert additional factual allegations as to the involvement of the named defendants in the March 15, 2008, incident. He will, therefore, be provided an opportunity to amend the complaint.

In the amended complaint, plaintiff still does not state which named defendants were responsible for either refusing to allow him to sit at the nearby table or refusing to provide assistance in getting on the ground. As with the original complaint, plaintiff refers only to "staff" and "attending officers." While he does mention specific conduct by correctional officer Albonico, this individual is not named as a defendant.

It is clear that plaintiff's claims against the specific named defendants is based solely on their roles as supervisory personnel. Plaintiff very specifically claims that defendants "were grossly reckless in the supervision of subordinate employees." Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d

1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations, or had actual knowledge of the violations and failed to act to prevent them. See id. When a defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

Plaintiff was advised in the prior order that, in order to state a claim, he must allege facts to link the named defendants to a constitutional violation. As indicated above, this requirement is also true for supervisory defendants. Despite having been apprised of the applicable legal principles, plaintiff seems to be either unable or unwilling to comply.

### III. CONCLUSION

Because it does not appear possible that the deficiencies identified herein can be cured by amending the complaint further, plaintiff is not entitled to leave to amend prior to dismissal of the entire action. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff shall show cause in writing, within 30 days of the date of this order, why this action should not be dismissed without further leave to amend.

IT IS SO ORDERED.

DATED: October 28, 2008

　　　　　　　　　　　　　　　　　　　　　　　　　　
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE